IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| JESSICA L. TRUJILLO,<br><br>          Plaintiff,<br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>          Defendant. | MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER<br><br>Case No. 1:12-cv-89-BCW<br><br>Magistrate Judge Brooke C. Wells |

Plaintiff Jessica L. Trujillo ("Plaintiff") seeks judicial review of the determination of the Commissioner of the Social Security Administration which denied her application for Social Security disability insurance benefits. After careful consideration of the written briefs and the administrative record, the Court has determined that oral argument is unnecessary and issues the following Memorandum Decision and Order REVERSING and REMANDING the decision of the Commissioner.

## BACKGROUND

Plaintiff, Ms. Trujillo, who was born on December 9, 1973, filed for Disability Insurance Benefits on September 14, 2009 and September 16, 2009, alleging disability beginning November 11, 2008.[1] Plaintiff contends she is disabled due to a number of impairments, but her primary disabling condition is fibromyalgia.[2]

Plaintiff's claim was denied initially on December 17, 2009, and upon reconsideration on March 11, 2010.[3] Plaintiff then requested an administrative hearing

---

[1] Docket no. 17, "Opening Brief" [hereinafter referred to as "Opening Br."]; Administrative Record ("Tr.") at 194.
[2] Opening Br. at 2.
[3] Id. at 1., Tr. 53-58, 64-69.

and a video conference was held on April 1, 2011 before an Administrative Law Judge ("ALJ").[4] On April 19, 2011, the ALJ issued a written decision denying Plaintiff's claim for benefits.[5] Plaintiff then appealed the denial to the Social Security Appeals Council which denied a review of the ALJ's decision on February 23, 2012.[6] Thus, the ALJ's decision is the final decision of the Commissioner for purposes of judicial review.[7]

In the ALJ's decision, the ALJ found at Step One of the required sequential evaluation process[8] that Plaintiff has not engaged in substantial gainful activity since November 11, 2008, the alleged onset date.[9] At Step Two, the ALJ found that the Plaintiff's severe impairments were "(1) fibromyalgia; (2) mild mood swings; (3) mild depressive disorder; (4) Raynaud's Syndrome; and (5) obesity."[10] The ALJ further found that the Plaintiff's alleged Irritable Bowel Syndrome is a non-severe impairment.[11]

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments contained within the regulations.[12]

Next, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform sedentary work, except the claimant was limited to the following:

> sitting for up to six hours in an eight-hour workday; standing/walking for up to six hours in an eight-hour workday; lifting and carrying up to ten pounds; the claimant requires a sit/stand option; the claimant cannot climb ladders, ropes, or scaffolds; the claimant is subject to occasional postural limitations such as bending, kneeling, crouching, and stooping; the

---

[4] Id.
[5] Tr. at 13-23.
[6] Opening Br. at 1.
[7] See 42 U.S.C. § 405(g); 20 C.F.R. § 404.971.
[8] See Grogan v. Barnhart, 399 F.3d
[9] Tr. at 15.
[10] Id.
[11] Tr. at 15-16.
[12] Tr. at 16.

claimant can constantly handle with both hands; the claimant must avoid exposure to dangerous heights or unprotected machinery.

In addition, the claimant has the following mild non-exertional limitations; the claimant is able to understand, remember, and carry out simple to semi-complex instructions; the claimant is able to work with co-workers, supervisors, and the public; and, the claimant is able to sustain concentration, persistence, or pace on a sustained basis for eight hours.[13]

As to the medical opinions rendered in making the RFC determination, the ALJ gave considerable weight to the opinions of David Peterson, M.D. and Rox Burkett, M.D.[14] Dr. Peterson conducted a physical residual functional capacity assessment and opined that the Plaintiff was capable of light work due to pain and fatigue and avoiding exposure to the cold.[15] The ALJ stated "Dr. Peterson thoroughly reviewed the medical evidence of regard and noted that the claimant had been diagnosed with fibromyalgia, but there was no evidence confirming trigger points. A review of the record subsequent to Dr. Peterson's assessment does not show this evidence."[16]

The ALJ also gave considerable weight to the opinions of Patricia Truhn, Ph.D. and Robert Finley, Ph.D.[17] Dr. Truhn, a state agency psychological consultant, conducted a psychiatric review of the Plaintiff and opined that the Plaintiff "had a mild restriction in activities of daily living, and in maintaining concentration, persistence or pace."[18] Dr. Truhn further opined that Plaintiff had no difficulties in maintaining social functioning.[19] Dr. Finley, a state agency psychological consultant affirmed Dr. Truhn's decision and noted "that there was no worsening of the claimant's psychological conditions, no new

---

[13] Tr. at 18.
[14] Dr. Burkett is a state agency medical consultant who affirmed Dr. Peterson's decision. Tr. at 19.
[15] Id. at 19.
[16] Id.
[17] Id.
[18] Id.
[19] Id.

allegations, and that the claimant was not seeking psychiatric help."[20] The ALJ also discussed the examination of the Plaintiff by Craig Swaner, Ph.D., who conducted a mental consultative examination of the Plaintiff. The ALJ's written opinion does not discuss the weight accorded to Dr. Swaner.[21]

Finally, the ALJ gave very little weight to Plaintiff's treating physician Dr. Kevin Gardner, who opined the Plaintiff is unable to work.[22] In rejecting Dr. Gardner's opinion, the ALJ stated:

> [Dr. Gardner's] assessment is inconsistent with the medical evidence of record. Additionally, the possibility exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality, which should be mentioned, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.[23]

At Step Four, the ALJ found the Plaintiff was not capable of performing her past relevant work as a customer-service clerk or insurance checker because these positions do not allow for a sit/stand option that the claimant requires.[24] However, the ALJ found there are other jobs existing in the national economy Plaintiff is able to perform.[25] Thus, at Step Five after considering the testimony of a vocational expert along with Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of performing occupations such as election clerk and/or addresser.[26]

---

[20] Id.
[21] Tr. 19-20.
[22] Tr. at 20.
[23] Id.
[24] Tr. at 21.
[25] Id.
[26] Tr. at 21-22.

Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.[27] In her appeal, Plaintiff contends that the ALJ's decision should be reversed because it was not supported by substantial evidence and the ALJ did not give any specific and legitimate reasons for rejecting the opinion of Plaintiff's treating physician, Dr. Kevin Gardner.[28]

Specifically, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ misstated the record by relating that Dr. Peterson found Plaintiff had been diagnosed with fibromyalgia, "but there was no evidence confirming trigger points."[29] Plaintiff contends that Dr. Peterson did find evidence of trigger points and trigger points had been found by other medical professionals. Because of this misstatement, Plaintiff argues there was not substantial evidence to support the ALJ's rejection of Dr. Gardner's opinions. Further, the ALJ's reasoning for giving Dr. Gardner's opinion little weight is not supported by specific and legitimate reasons.

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to determining whether his findings are supported by "substantial evidence" and whether the correct legal standards were applied.[30] If supported by substantial evidence, the findings are conclusive and must be affirmed.[31] "Substantial evidence" means "such evidence as a reasonable mind might accept as adequate to support a conclusion."[32] Thus, "[t]he possibility of drawing

---

[27] Tr. at 22.
[28] Opening Br. at 4.
[29] Tr. at 19.
[30] Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); Ruthledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000); Glenn v. Shalala, 21 F.3d 983 (10th Cr. 1993).
[31] Richardson v. Perales, 402 U.S. 389, 401 (1981).
[32] Clifton v. Charter, 79 F.3d 1007, 1009 (10th Cir. 1996).

5

two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[33]

Additionally, the ALJ is required to consider all of the evidence; however, the ALJ is not required to discuss all evidence.[34] In its review, the Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[35] However, a reviewing Court should not re-weigh the evidence or substitute its own judgment for that of the ALJ's.[36] Further, the Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'"[37] Lastly, "[t]he failure to apply the correct legal standard[s] or to provide this Court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[38]

In applying these standards, the Court has considered the Administrative Record,[39] as well as the parties' briefs and arguments. The Court finds the following:

## ANALYSIS

### I.  Substantial Evidence

In support of her claim that the Commissioner's decision should be reversed, Plaintiff argues that the ALJ erred by misstating the record with regard to the medical opinion of Dr. David Peterson whose opinion was given considerable weight. Specifically, the ALJ stated: "Dr. Peterson thoroughly reviewed the medical

---

[33] Zoltanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2000).
[34] Id.
[35] Shepherd v. Apfel, 184 F.3d 1196, 1199 (10 Cir, 1999).
[36] Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).
[37] Lax, 489 F.3d at 1084 (quoting Zoltanski, 372 F.3d at 1200).
[38] Jensen v. Barnhart, 436 F.3d 1163, 1165 (10th Cir. 2005)(internal citations omitted).
[39] Docket no. 9.

evidence of regard and noted that the claimant has been diagnosed with fibromyalgia, but there is no evidence confirming trigger points.[40] A review of the record subsequent to Dr. Peterson's assessment also does not show this evidence." [41] Rather, the Plaintiff argues that there is in fact evidence of trigger point diagnoses within the record.[42] Defendant argues the ALJ adequately addressed Plaintiff's fibromyalgia, despite his "clumsy phrasing of Dr. Peterson's opinion."[43] The Defendant further argues Plaintiff has failed to show that any harm resulted from error by the ALJ.

As stated above, "substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[44] Here, the ALJ concluded that Dr. Peterson's opinion was entitled to considerable weight because he found no evidence of the existence of trigger points and according to the ALJ, the record doesn't contain such evidence. However, a review of the record does indicate Plaintiff's fibromyalgia has been diagnosed through trigger points.[45] Although Dr. Peterson along with other medical professionals found Plaintiff could work despite her treating physician's opinion to the contrary, because the correct quotation of the record could have changed the ALJ's conclusions as to the weight assigned to Dr.

---

[40] According to the ALJ's written opinion, "fibromyalgia is recognized as a medically determinable impairment when the evidence meets the diagnostic criteria of (1) a history of widespread pain present for at least three months. 'Widespread' refers to there being pain in a) both sides of the body and b) above and below the waist and (2) There must be pain, on a digital palpitation, present in at least 11 of the 18 identified tender (trigger) point sites'" Tr. at 16.
[41] Tr. at 19.
[42] Opening Br. at 6.
[43] Docket no. 22 at 7.
[44] Lax, at 1084.
[45] See Tr. at 232, 331, 340,

Peterson, the Court finds this error not be harmless and the ALJ's conclusion not supported by substantial evidence.[46]

## II. ALJ's Rejection of Opinion of Treating Physician, Dr. Kevin Gardner

In the 10th Circuit, "[t]he ALJ must give 'controlling weight' to the treating physician's opinion, provided that opinion 'is well-supported…and is not inconsistent with other substantial evidence.'"[47]  Further,

> [e]ven if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 404.1527]. Those factors are: (1) the length of treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.
>
> Under the regulations, the agency rulings, and [Tenth Circuit] case law, an ALJ must give good reasons…for the weight assigned to a treating physician's opinion…that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight.  If the ALJ rejects the opinion completely, he [or she] must give specific, legitimate reasons for doing so.[48]

In addition, as with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.[49]  However, "[i]n choosing to reject [a] treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may

---

[46] See DiRocco v. Astrue, No. 09-094S- 2010 WL 1490827 at *11 (D. R.I. January 14, 2010)("a finding of harmless error would inappropriately require the Court to step into the ALJ's shoes.")
[47] White v. Barnhart, 287 F.3d 903, 907 (10th Cir. 2001)(citing 20 C.F.R. § 404.1527(d)(2)).
[48] Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004)(internal quotations and citations omitted); see also 20 C.F.R. § 404.1527(c); Social Security Ruling ("SSR") 96-2p.
[49] See e.g., Ruthledge v. Apfel, 230 F.3d. 1172, 1174 (10th Cir. 2000); Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988).

reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."[50]

Here, the ALJ's boilerplate statements that Dr. Gardner may have sympathized with the Plaintiff and satisfied her requests for an opinion regarding her disability in order to avoid unnecessary doctor-patient tension constitutes improper speculation and inadequate lay opinion judgment by the ALJ.[51] As noted above, the ALJ is not required to discuss each and every factor set forth by the 10th Circuit in examining treating physician testimony, but those the factors to be considered are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention to which tend to support or contradict the opinion.[52]

In the instant case, there is no evidence the ALJ considered any of these factors in rejecting Dr. Gardner's opinion except that Dr. Gardner's opinions are inconsistent with the opinions of other medical professionals. Importantly, the other medical professionals

---

[50] Langley at 1121 (quoting McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)("holding [The 10th Circuit] held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's care is not a good reason to reject his opinion as a treating physician." Id. at 1253.)

[51] See Langley, at 1121; Charboneau v. Astrue, No. 11-cv-547-PJC, 2012 EL 533474748 at *6-7 (N.D. Okla. October 26, 2012)(finding the language used by the ALJ in addressing the opinion evidence of a treating physician to be inadequate, improper, and conclusory based upon the ALJ's use of the exact same sentence used by the ALJ in this case in rejecting Dr. Gardner's opinion, ("[W]hile it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case"). In so finding, the Court reasoned, the "boilerplate language used by the ALJ in rejecting the opinion of Dr. Roberts is similar to the language previously disapproved by the Tenth Circuit in multiple cases."); see also Taylor v. Astrue, No. CIV-09-160-SPS, 2010 WL 3860437 at *4-5 (E.D. Okla. September 30, 2010); Jaques v. Astrue, No. 2:12-cv-215-BCW, 2013 WL 603879 at *5 (D. Utah, February 19, 2013).

[52] Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004)(internal quotations and citations omitted).

discussed in the ALJ's opinion either did not physically examine the Plaintiff or only examined/visited with her on one occasion. In addition, the ALJ does not discuss or provide specific reasons as to why he viewed Dr. Gardner's opinion as inconsistent with the medical evidence of record. Lastly, while this Court makes no determination as to whether the Plaintiff will ultimately be found to be disabled, the Court does not approve of the use of the boilerplate language to reject treating physician opinion without providing specific and legitimate reasons supported by the record for doing so.

Therefore, because (1) the ALJ misstated the record with regard to the evidence of trigger points and (2) improperly speculated as to the reasons behind the Plaintiff's treating physician's opinions, the ALJ's opinion was not supported by substantial evidence and the ALJ erred in rejecting the opinion of the Plaintiff's treating physician.

## **CONCLUSION**

For the foregoing reasons, the Court holds that Plaintiff's arguments regarding the ALJ's rejection of the Plaintiff's claim for disability benefits have merit and warrant remand for further proceedings in this case. Therefore, IT IS HEREBY ORDERED that the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this memorandum decision and order.

**IT IS SO ORDERED.**

DATED this 25 February 2013.

_____
Brooke C. Wells
United States Magistrate Judge